UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JAMES J. LEASE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL NO. 3:11cv87 |
| | ) |
| DR. GERALD MYERS, DR. MICHAEL HOUSE, MICHAEL MITCHEFF, | ) ) ) |
| | ) |
| Defendants. | ) |

OPINION AND ORDER

This matter is before the court on a motion for summary judgment filed by defendant Dr. Michael House ("Dr. House") on May 15, 2012. The plaintiff, James J. Lease ("Lease"), proceeding pro se, has failed to file a response.

For the following reasons, the motion for summary judgment will be granted.

Summary Judgment

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Not every dispute between the parties precludes summary judgment, however, since "[o]nly disputes over facts that might affect the outcome of the suit under the governing law" warrant a trial. Id. To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Heft v. Moore, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly

supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." Goodman v. Nat'l Sec. Agency, Inc., 621 F.3d 651, 654 (7th Cir. 2010).

Discussion

Dr. House, is a surgeon licensed in the State of Indiana. Lease is a prisoner who was incarcerated at the Indiana State Prison in Michigan City, Indiana at all times relevant to his Complaint.

Lease has been incarcerated at the Indiana State Prison since September 25, 2006. (Affidavit of Lori Bootz) at ¶ 7). On May 6, 2009, Dr. House performed a surgical procedure to remove Lease's pancreas. (Complaint at § III, ¶ 4). A month later a hernia formed at or near the incision, causing Lease discomfort and pain. (*Id*. at § III, ¶¶ 1, 4). On August 24, 2010, Dr. House examined the hernia and described it as a common occurrence connected with the May 6, 2009 surgery. (*Id.* at § III, ¶¶ 1- 4). Dr. House recommended surgery and ordered that the repair surgery be scheduled for general surgery at Wishard Memorial Hospital. (*Id*.). According to Lease, the repair surgery caused all of his pain to disappear. (*Id.* at § III, ¶4). Thus, Lease is no longer in pain as a result of the repair surgery.

Indiana State Prison's Offender Grievance Program involves two-steps, "the filing of a grievance and an appeal." (Affidavit of Lori Bootz at ¶ 4). The prisoner must file a grievance within twenty (20) work days of the incident. (*Id*. at ¶ 6). A prisoner may file a grievance for issues or complaints related to medical treatment. (*Id.* at ¶ 5). The entire time Lease has been incarcerated, he has only filed two grievances. (*Id*. at ¶¶ 8-10).

Of the two grievances, only one relates to any medical issues, and it was filed on or about

August 4, 2010. (Affidavit of Lori Bootz at ¶ 10). His other grievance was related to comments made by a staff member, and has no relation to the issues in these proceedings. (*Id*. at ¶ 11). Prison officials responded to the medical grievance, and Lease did not appeal. (*Id*. at ¶ 10). Lease did not file any grievance after his consultation with Dr. House on August 24, 2010. (Affidavit of Lori Bootz at ¶¶ 8-10); "The grievance records show that Mr. Lease did not exhaust the administrative remedies available to him regarding any medical issues." (Affidavit of Lori Bootz at ¶ 12). Instead of exhausting the remedies available to him, Lease filed this lawsuit.

Lease avers that he forgot to follow up on his grievances as a result of pain. (Defendant's Exhibit D - Unverified Letter in Response to Co-defendants' Motion for Summary Judgment). He further avers that he attempted to exhaust his remedies through the Ombudsman Bureau. (*Id.*). The Ombudsman Bureau responded with a letter indicating that it is not part of the grievance process, and therefore not the proper forum for a grievance. (*Id.*) Lease further argues that he submitted an appeal to the grievance, Log ID 605070. (*Id.*) It is undisputed that the document Lease argues was the appeal was not filed until October 30, 2011, more than one-year after he received a response to the grievance. (*Id.*) Lease had ten (10) working days to appeal the August 12, 2010 grievance response. (Defendants' Exhibit C-2 - Grievance Response Attached to Affidavit of Lori Bootz). Moreover, Lease had twenty (20) days from the date he was seen by Dr. House (August 24, 2010) to file a grievance about that consultation. (Affidavit of Lori Bootz, ¶ 6). Clearly, Lease did not file an appeal or a grievance within the applicable time frame.

Dr. House argues that Lease's actions against him should be dismissed for the following four reasons. First, Lease has failed to exhaust his administrative remedies, and is therefore barred by the Prison Litigation Reform Act ("PLRA") from asserting any claims against Dr.

House. Second, Lease's claims that the surgery was negligently performed are untimely, and therefore barred by the applicable two-year statute of limitations. Third, Lease's own pleadings reveal that Dr. House was not, as a matter of law, deliberately indifferent to Lease's medical needs. Fourth, to the extent Lease's claims sound in state law, the claims are improper as Lease has not exhausted his state law remedies.

On March 23, 2012, this Court issued an Order granting the Co-defendants' summary judgment on all of Lease's claims for failure to exhaust his administrative remedies. [DE 30] Dr. House seeks an Order of this Court expressly noting that the reasoning of the Court's March 23, 2012 Order applies equally to Dr. House.

Pursuant to the Prison Litigation Reform Act, 42 U.S.0 1997e(a), "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Porter v. Nussle*, 534 U.S. 516, 519-20 (2002) (quoting 42 U.S.C. 1997e(a)). Thus, the Supreme Court has directed that "[a]ll 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be plain, speedy, and effective.' Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." *Id*. at 524 (citations omitted).

The Seventh Circuit takes "a strict compliance approach to exhaustion. A prisoner must properly use the prison's grievance process. If he or she fails to do so, the prison administrative authority can refuse to hear the case, and the prisoner's claims can be indefinitely unexhausted." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (citing *Pozo v. McCaughtry*, 286 F.3d 1022,

1025 (7th Cir. 2002). The Supreme Court adopted a similar analysis in *Woodford v. Ngo*, 548 U.S. 81 (2006). In *Woodford*, the Court held that even though the prisoner filed a grievance, because that grievance was denied as untimely, the prisoner had not "exhausted" his remedies under the PLRA. *Id*.

As the Seventh Circuit has held, "[a] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating. Failure to do what the state requires bars, and does not just postpone, suit under § 1983." *Pozo*, 286 F.3d at 1024. Moreover, "futility" is no defense to a prisoner's obligation under § 1997e(a). *See Perez v. Wisconsin Dep't of Corrections*, 182 F.3d 532, 534 (7th Cir. 1999) ("No one can know whether administrative requests will be futile; the only way to find out is to try.").

This Court "must not proceed to render a substantive decision until it has first considered § 1997e(a)." *Perez*, 182 F.3d at 534. Accordingly, this Court must rule first on the § 1997e(a) issue before moving to any of Dr. House's other arguments.

As noted, Lease alleges that a surgery Dr. House performed caused a hernia to develop one month after the surgery. Lease further alleges that Dr. House failed to treat his injuries after that May, 2009 surgery. Lease has only filed one grievance about these issues, and that grievance was prior to Dr. House's August 24, 2010 examination. Lease received a response to that grievance, but Lease did not pursue an appeal to complete the grievance process available to him. As this Court noted in its March 23, 2012 Order, Lease's failure to appeal that grievance results in his failure to exhaust his administrative remedies. Since Lease's claims against Dr. House stem from an assertion that Dr. House was working as a contractor for the prison, Lease should

5

have filed his grievance regarding Dr. House's conduct prior to bringing this action.

In addition, Lease has not filed any complaint with an Indiana medical review panel as is required under Indiana Code section 34-18-8-4. Under this section of the Code, "an action against a health care provider may not be commenced in a court in Indiana" unless the claimant has presented his complaint to the medical review panel, and the review panel has given its opinion. Ind. Code § 34-18-8-4. Lease has not filed a complaint with a medical review panel, and no decision has been rendered on the issue. Thus, Lease has failed to exhaust his state law remedies. As Lease has failed to exhaust his available administrative remedies, the PLRA bars Lease's complaint, and Dr. House is entitled to summary judgment.

Additionally, Lease's claims are also barred by the applicable statute of limitations. Specifically, Lease's complaint was filed more than two years after the surgery to remove his pancreas. As Lease alleges in his complaint, it was this surgery which caused all of the resulting injuries from the hernia. This Court has summarized the applicable statute of limitations for a § 1983 action brought by a prisoner premised upon medical malpractice as follows:

> Because there is no federal statute of limitations for actions filed pursuant to § 1983, courts apply the most appropriate state statute of limitations. Bell v. City of Milwaukee, 726 F.3d 1205, 1229 (7th Cir. 1984). Section 1983 claims are considered as personal injury claims for purposes of determining the applicable state statute of limitations. Wilson v. Garcia, 471 U.S. 261 (1985). "Indiana law requires that any action for injuries to the person or character must be commenced within two years after the cause of action accrues. I.C. 34-11-2-4 (formerly Ind. Code § 34-1-2-2(1))." Doe v. Howe Military School, 227 F.3d 981, 987 (7th Cir. 2000); see also Snodderly v. R.U.F.F. Drug Enforcement Task Force, 239 F.3d 892, 894 (7th Cir. 2001) (Two-year statute of limitations "is applicable to all causes of action brought in Indiana under 42 U.S.C. § 1983"). The statute of limitations is an affirmative defense, but if a plaintiff "pleads facts that show his suit is time-barred or otherwise without merit, he has pleaded himself out of court." Tregenza v. Great American Communications Co., 12 F.3d 717, 718 (7thCir. 1993), cert. denied, 511 U.S. 1085 (1994).

Perkins v. Johnston, 431 F. Supp. 2d 898, 901 (N.D. Ind. 2006). Accordingly, Lease's § 1983 claim against Dr. House is subject to Indiana's two-year statute of limitations.

It is undisputed that Dr. House performed the surgery to remove Lease's pancreas on May 6, 2009, and that Lease alleges a hernia appeared a month later in June of 2009. Moreover, Lease alleges that the hernia was a direct result of the surgery. However, Lease did not file his cause of action against Dr. House until May 11, 2011, two years and six days after the surgery. Under Indiana law, a cause of action from an injury related to a surgery begins to accrue as of the date of the surgery. Ind. Code § 34-1 8-71(b). In other words, the "statute requires the filing of a medical malpractice action within two years of the alleged negligent act and has been upheld as constitutional when applied to all plaintiffs able to discover the alleged malpractice and injury within two years from the occurrence." *Langman v. Milos*, 765 N.E.2d 227, 234 (Ind. Ct. App. 2002) (citing *Martin v. Richey*, 71 1 N.E.2d 1273, 1278 (Ind. 1999)).

In the present case, Lease admits in his pleadings that he discovered the injury within a month of the surgery, and that the injury was a result of the surgery. Under Indiana law, awareness within a month of an injury caused by an alleged malpractice of the surgeon is sufficient to cause the date of the surgery to serve as the accrual date. *See e.g., Langman*, 765 N.E.2d at 234 ("Within two years of his surgery . . . [plaintiff] had enough information that a reasonably diligent person should have discovered the alleged malpractice claim against the [doctors]."). Since Lease knew about his injury within a month after the surgery, Lease had to bring any claim on that surgery within two years of the date of the surgery. Lease failed to do this. Instead, he filed his complaint two years and six days after the date of the surgery. Therefore, his complaint is barred by the applicable two-year statute of limitations.

All of Lease's claims against Dr. House stem from the surgery performed on May 6, 2009. In order to timely bring any state or federal action pursuant to the alleged injuries from that surgery, Lease would have had to file his complaint on or before May 6, 2011. Lease failed to do this. Instead, he filed is complaint on May 12, 2011 — six days late with respect to all of the allegations against Dr. House. As a result, Lease has pleaded himself out of his cause of actions by admitting sufficient facts from which this Court can determine that Lease's cause of action accrued more than two years before his complaint.

Lease attempts to state a claim under § 1983 for a violation of his Eighth Amendment right to be free from cruel and unusual punishment. "In order for an inmate to state a claim under § 1983 for medical mistreatment or denial of medical care, the prisoner must allege 'acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Skaggs v. Lockett*, 2012 WL 426256, at * 2 (S.D. Ind., February 8, 2012) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "To be deliberately indifferent, the defendant[] must have acted with 'a sufficiently culpable state of mind." *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006) (quoting *Greeno v. Daley*, 414 F.3d 645, 658 (7th Cir. 2005). That is, the defendant "must know of the serious risk to the prisoner's health, *i.e.*, the serious medical need at issue, and they must also consciously disregard that risk/need so as to inflict cruel and unusual punishment upon the prisoner." *Id*. Importantly, "medical malpractice, negligence, or even gross negligence does not equate to deliberate indifference." *Id.* "It is not enough to show, for instance, that a doctor should have known that surgery was necessary; rather, the doctor must know that surgery was necessary and then consciously disregard that need in order to be held deliberately indifferent." *Id*.

Lease's claim fails to make such a cause for two reasons. First, judging from the face of Lease's complaint, he has failed to plead that Dr. House consciously disregarded any serious medical need. Second, the facts reveal that Dr. House consciously regarded and responded to the risk/need resulting in surgery which relieved Lease's pain.

As noted above, all of Lease's complaints against Dr. House stem from the surgery Dr. House conducted more than two years prior to Lease's complaint. However, Lease also alleges that Dr. House performed a consultation on August 24, 2010. (Complaint at § III, ¶ 4). During that consultation, Dr. House informed Lease that the hernia was "a common occurrence with this type of surgery." (*Id.*) Lease avers that Dr. House did not complete a thorough examination and told Lease that the "pain was not related to [the] hernia." Nevertheless, Lease's pleadings admit that Dr. House recommended surgery, and informed Lease that "it would be sometime until [his] surgery to fix this rupture." (*Id.*). And, Lease also admits that "after [the] hernia surgery all of [his] pain has disappeared." (*Id.*). These pleadings amount to an admission that Dr. House recognized that the problem needed surgery, scheduled the surgery, and that the surgery resulted in the relief that Lease was seeking.

The Seventh Circuit has emphasized that "the Eighth Amendment does not require that prisoners receive unqualified access to health care. Rather, they are entitled to only adequate medical care." *Johnson*, 433 F.3d at 1013 (internal quotations and citations omitted). In *Johnson*, the court found that a doctor's recommendation of non-surgical remediation did not rise to the level of "deliberate indifference." *Id.* at 1014. Notably, the court indicated three separate types of hernias were presented in the record: (1) a hernia that is strangulated, requiring surgery; (2) a hernia that is reducible yet so painful or debilitating that surgery is required; and (3) a hernia that

9

is reducible and can be treated through non-surgical means. *Id*. Here, Lease's own pleadings admit that his hernia was never strangulated. (Complaint at § III, ¶ 1) (stating only a risk of strangulation but no actual strangulation). Thus, Lease simply alleges that his hernia resulted in sufficient pain to require surgery. And surgery is what Dr. House recommended and scheduled for Lease. Accordingly, by Lease's own admission in his pleadings, Dr. House acted, not with deliberate indifference, but rather with a conscious regard for Lease's medical need — namely surgery. And, by Lease's own admission, the surgery that Dr. House recommended resulted in the disappearance of all of Lease's pain. This action of care and concern for a patient cannot, as a matter of law, amount to a case of deliberate indifference. Accordingly, summary judgment will be granted in favor of Dr. House.

Even assuming that Lease has plead a threshold case for failure to treat/deliberate indifference, Lease's medical records indicate that on or about August 24, 2010, Dr. House evaluated Lease and recommended surgery. According to the handwritten notes on August 24, a 2 x 3 cm incisional hernia was observed and the patient was to be scheduled for laparoscopic hernia repair. In addition, pursuant to the encounter dictation, Dr. House evaluated the hernia, documented the pain, and recommended an assessment plan of laparoscopic incisional hernia repair. As the Seventh Circuit held in *Johnson*, "[i]t is not enough to show, for instance, that a doctor should have known that surgery was necessary; rather, the doctor must know that surgery was necessary and then consciously disregard that need in order to be held deliberately indifferent." *Johnson*, 433 F.3d at 1013.

In the present case, the evidence reflects that Dr. House understood that surgery was recommended, and (rather than consciously disregarding that recommendation), Dr. House made

the recommendation and scheduled the surgery. Pursuant to Lease's own admissions in the Complaint, that surgery relieved all of Lease's adverse symptoms. Accordingly, since Dr. House recommended the medical procedure which ultimately gave Lease the relief he was seeking, Dr. House, was not, as a matter of law, deliberately indifferent to Lease's medical needs. Dr. House is, therefore, entitled to summary judgment on Lease's claims against him.

As discussed above, Lease cannot maintain a federal action against Dr. House. In addition, to the extent Lease has sufficiently pled a state law cause action for medical malpractice, that claim is barred by Lease's failure to exhaust administrative remedies.

Under Indiana law, "an action against a health care provider may not be commenced in a court in Indiana before: (1) the claimant's proposed complaint has been presented to a medical review panel established under IC 34-18-10 (or IC 27-12-10 before its repeal); and an opinion is given by the panel." Ind. Code § 34-18-8-4. As the Seventh Circuit has noted, this provision applies equally to state law medical malpractice claims raised in federal court. *See Hines v. Elkhart General Hosp.*, 603 F.2d 646, 647 (7th Cir. 1979) (applying a prior version of the Indiana statute). In this case, Lease has failed to file a proposed complaint to the medical review panel, and no opinion has been given by the panel. Therefore, Dr. House is entitled to summary judgment as a matter of law that Lease failed to exhaust his state law remedies as required by the Indiana Medical Malpractice Act.

<u>Conclusion</u>

Based on the foregoing, Dr. House's motion for summary judgment [DE 33] is hereby GRANTED.


Entered: September 7, 2012.

s/ William C. Lee
William C. Lee, Judge
United States District Court